# EXHIBIT 2

```
 1                    IN THE UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF TEXAS
 2                             HOUSTON DIVISION

 3   _____
                                         )
 4   UNITED STATES OF AMERICA            )
                                         ) CRIMINAL ACTION NO.
 5   VS.                                 ) H-21-CR-588-1 AND 2
                                         )
 6   ANTHONY HUTCHISON AND BRIAN BUSBY   ) 9:16 A.M.
     _____)
 7

 8                               JURY TRIAL
                     BEFORE THE HONORABLE ANDREW S. HANEN
 9                      UNITED STATES DISTRICT JUDGE
                              MARCH 25, 2025
10                        DAY 2 - MORNING SESSION

11   APPEARANCES:

12   **FOR PLAINTIFF:**
     MR. ROBERT SEARLS JOHNSON
13   MS. HEATHER RAE WINTER
     United States Attorney's Office
14   1000 Louisiana, Suite 2300
     Houston, Texas  77002
15   (713)567-9000

16   **FOR DEFENDANT HUTCHISON:**
     MR. RUSSELL HARDIN, JR.
17   Rusty Hardin and Associates
     1401 McKinney, Suite 2250
18   Houston, Texas  77010
     (713)65-9000
19
     MS. LETITIA D. QUINONES-HOLLINS
20   Quinones & Associates, PLLC
     2202 Ruth Street
21   Houston, Texas  77004
     (713)481-7420
22
     **FOR DEFENDANT BUSBY:**
23   MR. DICK DEGUERIN
     MR. MARK WELLS WHITE, III
24   DeGuerin & Dickson
     1018 Preston Avenue, 7th Floor
25   Houston, Texas  77002
     (713)223-5959
```

```
09:38:38   1              Counts 27 and 28 concern Mr. Hutchison.  Counts 27 and
           2   28 apply only to defendant Hutchison.  These counts allege, for
           3   years 2017 and 2018, he willfully filed income -- filed income
           4   tax returns for his company, Southwest Wholesale, that contained
           5   false material statements.  Title 26, United States Code,
           6   Section 7206(1), makes it a crime for anyone to willfully make a
           7   false material statement on an income tax return.
09:39:13   8              For you to find the defendant Anthony Hutchison guilty
           9   of this crime, you must be convinced that the government has
          10   proved each of the following beyond a reasonable doubt:
09:39:22  11              First, that the defendant signed an income tax return
          12   that contained a written declaration under penalties of perjury;
09:39:31  13              Second, that in these returns for the years 2017 and
          14   2018, the defendant falsely stated his company's cost of goods
          15   sold was more than it was, total income was less than it was,
          16   and total income -- total tax was less than it was; that the
          17   defendant knew the statement was false; that the false statement
          18   was material; and that the defendant made the statement
          19   willfully, that is, with the intent to violate a known legal
          20   duty.
09:40:01  21              Counts 29 through 33 involve Mr. Busby.  Counts 29
          22   through 33 allege that for the years 2015 through 2019,
          23   Mr. Busby willfully filed individual income tax returns that
          24   contained false material statements.  Title 26, United States
          25   Code, Section 7206(1), makes it a crime for anyone to willfully
```

1  business office also.  Half of it was where he lived; half of it
2  was where his business office was, and that's where his
3  employees would report to work.
4              He then moved his business office to a location on
5  Almeda Genoa, but he still has a personal business office now in
6  his larger residence.  And so the FBI searched there, and they
7  found a number of documents, and some of his most personal
8  documents.  His tax returns are there, and these Day-Timers were
9  found there.
10             These are calendars -- you know, your standard
11 calendar, and these calendars are filled with notations about
12 Mr. Hutchison's doings at work:  His meetings; who he's meeting
13 with.  They reference people he works with; reference projects
14 he's working on.
15             At the back of one of those ledgers is the most
16 interesting piece of evidence in the case, I submit to you --
17 the most important document in the case.  And what that is, is a
18 handwritten ledger, and it's written by Mr. Hutchison, and this
19 ledger tracks his bribe payments to various individuals over a
20 four-month period in 2017.
21             And what's interesting about it is how detailed it is.
22 It's kept in minute detail, and it lists a number of pieces of
23 information.  So the first thing it lists, for each recipient of
24 a bribe, is the bribe amount.  It then lists, sometimes, the
25 location of the bribe, such as Gabby's BBQ, or Truluck's

1  mowing pattern, and if they go to a property, they can tell that
2  they're the last person that mowed it because it's mowed in
3  their pattern.  If someone else had been there, it wouldn't be
4  mowed; it wouldn't look like that.  And so the mowers will tell
5  you, basically, there is no other group, it's them; and the
6  schools get cut twice, and HISD gets billed for four cuts.
7              Now, back to the search.  So FBI's interviewing
8  Mr. Hutchison.  All his stuff is being taken out of his house.
9  Tens of thousands of dollars in cash are being taken out of the
10 house.  All his documents are being taken out.  His phone's
11 being taken out.  His computer's being taken out.  Obviously, he
12 knows he's in trouble.
13             Five days after the search, he has a meeting with
14 HISD, and there were some follow-up correspondence.  And the
15 communication was basically, Oh, my God, we've made this amazing
16 discovery in the office.  We've been mistakenly overbilling
17 HISD.  And so he says he wants to pay it back, and so he writes
18 a check to HISD for $850,000, which covers the overbilling for
19 just the 2019 year, and HISD deposits the check.
20             Mr. Hutchison says, during these -- this
21 correspondence, that he had actually discovered this -- this,
22 quote, problem in his finance department, and he discovered it
23 four months before and he told Larry Nabors, who's head of the
24 grounds maintenance group -- the mowing group, basically, at
25 HISD -- he told Mr. Nabors about it, and he's been waiting for

1  someone at HISD to get back to him.  That's his story.
2         Mr. Nabors will come in and testify and say he doesn't
3  remember a conversation like that, no one told him, and he would
4  remember if someone told him that there was an 850,000-dollar
5  billing error.  He'll say he never heard that one.
6         The other thing to keep in mind is this meeting at
7  HISD is happening five days after the search.  The search is
8  when Hutchison is first questioned about his billing practices
9  with mowing.  He says he talked to Nabors four months before and
10 told Nabors there was this problem with his billing practices.
11 When he talked to FBI five days ago, he said, Oh, no, there's
12 not a problem.  Those two statements are inconsistent.
13        The other thing he didn't tell F- -- HISD when he met
14 with them five days after the search, he didn't say anything
15 about the fraud that had been going on from 2013 to 2019, the
16 six years of fraud that preceded 2019.  He writes a check for
17 the 2019 overbilling.  He doesn't say anything about the same
18 exact scheme that had been going on for six years before that.
19        He also doesn't mention a separate false invoicing
20 scheme he has that involves overbilling HISD for mulch, and FBI
21 did not question him about that scheme when they interviewed him
22 five days before, and he doesn't mention it to HISD.  The mulch
23 scheme is other simple false invoicing scheme.
24        He buys mulch from a company in Nacogdoches called
25 Bailey Bark.  And under the contract that he has with HISD, he's

1   that particular job?  You write it down.  That's what was in the
2   ledger.
3           Now, during this time, it's important for me to tell
4   you that as good as he was in business, he also had developed a
5   serious problem, a gambling addiction, because now that Harvey
6   hit and he was making this money, he had money to feed the
7   addiction, the gambling problem.  And you will learn that he
8   lost a significant amount of money, enough money that would make
9   you sick to your stomach.  It's in the millions of dollars he
10  lost gambling.
11          That's a separate issue, though.  That's not why we're
12  here.  That's not why we're here.
13          And so he would pay his gambling debts through Bulldog
14  Timber because you will learn he paid -- he played at different
15  poker houses around the city, and Bulldog Timber will allow him
16  to write a check, and they would pay the gambling debts, because
17  he didn't have $100,000 readily available in his personal
18  account.  The only way he could pay those hundred thousand,
19  200,000, 50,000, $60,000 gambling debts was through his
20  business, and he paid millions of dollars in gambling debts
21  through his business.
22          But what he tried to do was pay the business back.  So
23  when he would win, he would take that money and try to spread it
24  out over the jobs, and a lot of that, you'll learn throughout
25  the trial.  What I can tell you is what the government states

|   |   |
|---|---|
| 1 | it -- maybe you can afford it, maybe you can't, but that's the |
| 2 | kind of doubt that you can't have and find someone guilty.  If |
| 3 | you have that kind of doubt, if you would hesitate, then you |
| 4 | have to say not guilty. |
| 11:53:11  5 | Thank you, Judge. |
| 11:53:12  6 | Thank you, ladies and gentlemen. |
| 11:53:15  7 | **THE COURT:**  Thank you, Mr. DeGuerin. |
| 11:53:22  8 | I tell you what, we're right at noon -- right before |
| 9 | noon.  Why don't we go ahead and take a break.  Let's plan on |
| 10 | starting back at 1:00 o'clock. |
| 11:53:35 11 | *(Jury out at 11:53 a.m.)* |
| 11:54:14 12 | **THE COURT:**  Be seated for a minute, and I'll let you |
| 13 | go. |
| 11:54:27 14 | To the extent that Mr. DeGuerin's objection to the |
| 15 | ledger is a -- basically, a James objection, a coconspirator |
| 16 | objection, the Fifth Circuit has approved of district courts |
| 17 | carrying that with the case, and that's what I'm going to do.  I |
| 18 | mean, just to reiterate the situation, we had a motions deadline |
| 19 | of December 6th.  No motion was filed, no objection to the |
| 20 | ledger, and I didn't get it till last week; otherwise, I would |
| 21 | have held a James hearing separately. |
| 11:55:07 22 | Now, I understand that the primary focus of |
| 23 | Mr. DeGuerin's objection is not the coconspirator part of it. |
| 24 | It's the Crawford objection, the confrontation.  The |
| 25 | Fifth Circuit has set out that drug ledgers, ledgers of this |

```
 1   nature, are not testimonial and, therefore, don't implicate
 2   Crawford, and so I'm overruling his Crawford objection on --
 3   although, if it -- you think it -- later on there's some
 4   evidence that indicates it was testimonial, I might listen to
 5   it, but I'm overruling it.
 6           All right.  I am making that ruling now because I
 7   understand your -- the government's first witness is going to
 8   approach that topic.
 9           All right.  Thank y'all.
10       (Lunch recess taken at 11:56 a.m.)
11                           -o0o-
12           I certify that the foregoing is a correct transcript
13   from the record of proceedings in the above matter.
14
15   Date:  June 19, 2025
16                       /s/Heather Alcaraz
                         Signature of Court Reporter
```

Timestamps: 11:55:51 (line 6), 11:56:01 (line 9), 11:56:03 (line 10)